UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEHRA WAHEED,

                Plaintiff,

-against-

MOLLY WASOW PARK; SCOTT FRENCH; THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES; HUMAN RESOURCES ADMINISTRATION,

                Defendants.

24-CV-9787 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is appearing *pro se*, brings this action under the court's federal question jurisdiction, alleging that Defendants violated her rights under state and federal law with respect to administration of various public assistance benefits. Named as Defendants are the City of New York, the New York City Department of Social Services ("DSS"), the New York City Human Resources Administration ("HRA"), HRA Administrator Scott French, and DSS Commissioner Molly Wasow Park. The Court construes the complaint as asserting claims under 42 U.S.C. § 1983 that Defendants violated Plaintiff's right to procedural due process and her right to the timely processing of applications for the Supplemental Nutrition Assistance Program ("SNAP") under 7 U.S.C. § 2020(e), as well as claims under New York state law. By order dated January 30, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead her claims in an amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff attempts to bring this case as a class action, and much of her lengthy complaint is devoted to describing the City of New York's administration of various public assistance benefits and how the City's administration of its benefits programs is harming "thousands of low-income New Yorkers."[1] (ECF 1, at 17.) The following allegations are drawn from the complaint, which is often repetitive and confusing, and are limited to those facts that directly involve Plaintiff.[2] In 2023, Plaintiff fell behind in paying her rent for an apartment unit located at 845 United Nations Plaza in Manhattan. She applied to HRA for a "One Deal One Shot Grant for Rental Arrears to stop eviction and pay back rent or even advanced rent and storage bill" but her request "was completely ignored." (*Id.* at 22.) On November 6, 2023, Plaintiff filed her "[f]irst application" for $90,000 for Emergency Safety Net Assistance ("ESNA"). (*Id.*) On October 26, 2023, Plaintiff submitted her "[s]econd application" for ESNA, seeking $67,500 for a year's "up front rent."[3] (*Id.*) Both "Shelter Arrears Repayment Agreements" were "authorized and signed" by HRA employees, and the documents included a note that the application would be "deemed complete" after Plaintiff signed it. (*Id.*) However, Plaintiff "never received any payments on either of the applications after [she] signed and set it back with all required documentation." (*Id.*)

Plaintiff had been paying for storage from 2012 through 2020, and from 2021 through 2022, during which time HRA paid the monthly storage fee directly to the storage company. (*Id.*

---

[1] As discussed below, because Plaintiff is proceeding *pro se* and is not attorney, she may not bring a class action in federal court.

[2] In addition to the 41-page, single-spaced complaint, on December 19, 2024, Plaintiff filed a request for the court to issue summonses that included an additional 78 pages of exhibits. (ECF 14.)

[3] Plaintiff does not explain how her "second" application was submitted before her "first" application.

3

at 22.) When Plaintiff was served with eviction, she rented another storage unit and HRA paid $161.99 a month until August 2023. After August 2023, however, "it went unpaid [and] accumulated [a] late fee on [the] past due amount." (*Id.* at 22-23.) When Plaintiff "inquired, [she] was not given accurate information [on] the application and status of payment and never received any certified notices by mail." (*Id.* at 23.)

When Plaintiff was evicted from her apartment in December 2023, the movers brought all her belongings to two Manhattan Mini Storage units. Plaintiff "submitted a request for rental assistance and storage bill again as it was accumulated with late unpaid fee since August of 2023 with the total amount past due including late fee for storage was $5,500." (*Id.* at 24.) Plaintiff made multiple requests by "submitting Form I-137A," but nothing was paid by HRA for storage or apartment rent, and, on February 28, 2024, all of Plaintiff's belongings, which she values at "$439,954,97" were auctioned by the storage facility to satisfy her unpaid bills. (*Id.*)

Plaintiff alleges that she had two HRA fair hearings with respect to her applications for benefits from HRA. In each case, the Administrative Law Judge ("ALJ") directed HRA to process Plaintiff's applications for benefits. Plaintiff alleges that, in each case, HRA has failed to comply the ALJ's order. In a January 19, 2024 decision in Fair Hearing #8717039H, the ALJ determined that Plaintiff applied for "assistance to pay rent arrears" and that HRA had failed to act on that application. (*Id.*) The ALJ directed the agency to "[c]ontinue to process [Plaintiff's] application." (*Id.*) In a February 29, 2024 decision in Fair Hearing #8739247H, the ALJ determined that Plaintiff submitted an application for "payment of storage fees," and that HRA has not acted on that application. (*Id.* at 26.) The ALJ directed the HRA to "immediately investigate [Plaintiff's] eligibility for a special grant for the payment of storage fee," and to provide Plaintiff with written notification of the results of that investigation. (*Id.*)

Plaintiff appears to allege that, after the fair hearing, HRA stated that she did not provide sufficient information in her request for rental arrears, although Plaintiff maintains that she did submit the requested documents. (*See id.* at 27.) Elsewhere in the complaint, however, Plaintiff alleges that she was denied rental arrears because HRA determined that her rental unit "seems to be a business enterprise and not a residence." (*Id.* at 29.) Plaintiff states that her request for payment of storage fees was ultimately denied because HRA found that she was not eligible for such payments because her storage units "do not comply with agency policy regarding size & amount." (*See id.*) In the complaint, Plaintiff challenges HRA's conclusions with respect to both requests.

Plaintiff also references various "notices" she received from HRA in April 2024, stating that she is ineligible for payment of her storage fees because her "three [s]torage units exceeds the allowable amount for [her] household size" (*id.* at 34); she has failed to provide various requested documentation required for her application for back rent; and that she is ineligible for "[r]eplacement of [c]lothing lost as a result of a disaster" because she "does not meet the criteria for clothing allowance" (*id.* at 35). Plaintiff contests the factual underpinnings of each of these determinations.

Plaintiff enumerates causes of action for "failure to timely process completed SNAP applications and recertifications" in violation of the SNAP Act and implementing regulations (*id.* at 31); "failure to maintain system that provide access for initial SNAP applications and recertifications" in violation of the SNAP Act and implementing regulations (*id.* at 32); due process claims arising from her applications for benefits; and various claims under state law.

Plaintiff requests various forms of injunctive relief and money damages.

## DISCUSSION

### A.    Claims Against HRA and DSS

Plaintiff's claims against the HRA and DSS must be dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against HRA and DSS for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, the Court will construe any allegations against HRA and DSS as being asserted against the City of New York, which is also a named defendant in this action.

### B.    Personal Involvement

Plaintiff asserts constitutional claims under 42 U.S.C. § 1983 regarding the denial or untimely processing of her applications for public assistance benefits issued by the City of New York (through HRA). Plaintiff must amend her complaint to name as a defendant the individual New York City official(s) who denied or failed to process her application for these benefits, denied her procedural due process to challenge the denial of or failure to timely process her application for these benefits, or provided her inadequate process to do so. A claim for relief under Section 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of

the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)).

A plaintiff must also allege facts showing the individual state actor defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." (internal quotation marks and citation omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under [Section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Here, Plaintiff names as Defendants DSS Commissioner Molly Park and HRA Administrator Scott French. Plaintiff does not allege that these supervisory officials were directly and personally involved in any alleged constitutional violation, and she names no individual who was directly and personally involved in those alleged violations. In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint in which she names such individuals as defendants and alleges facts showing how those individuals were directly and

7

personally involved with the alleged violations of her federally protected rights with respect to her receipt of public assistance benefits.

**C.    Procedural Due Process Claims**

The Court understands Plaintiff's complaint as asserting that she was denied procedural due process as to her receipt of public assistance benefits from an agency of the City of New York. The constitutional requirement of procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The two threshold questions in any Section 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

Public assistance benefits "have long been afforded constitutional protection as a species of property protected by the federal Due Process Clause." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 262 & n.8 (1970)); *see also M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 432 (S.D.N.Y. 2006) ("Persons who are qualified to receive welfare benefits have a legitimate claim of entitlement to such benefits."). Applicants for benefits, no less than recipients, possess such a property interest. *Kapps*, 404 F.3d at 113. In the context of public assistance benefits, due process typically requires pre-deprivation notice and an opportunity to be heard. *Goldberg*, 397 U.S. at 260-61; *Hart v. Westchester Cnty. Dep't of Soc. Servs.*, No. 98-CV-8034, 2003 WL 22595396, at *4 (S.D.N.Y. Nov. 7, 2003).

Where the government deprives a plaintiff of some property interest pursuant to an established procedure,[4] procedural due process is generally satisfied so long as some form of hearing is provided before the individual is deprived of the property interest. *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). By contrast, where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate post-deprivation remedy); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (holding that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy"). When determining whether a person has been deprived of procedural due process, "the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not plaintiff took advantage of the state procedure." *Vialez v. New York City Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991). In addition, "if a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Id.* at 113.

---

[4] Conduct is undertaken in accordance with established state procedures when, for example, it is "pursuant to a statute, code, regulation, or custom," or is the result of a decision made by a high-ranking official with "final authority over significant matters." *See Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (quoting *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 152 n.3 (2d Cir. 2010)).

New York State law provides public assistance applicants remedies to challenge the denial of benefits, including fair hearings under N.Y. Soc. Serv. Law § 22 and 18 N.Y.C.R.R. § 358, as well as an appeals process through Article 78 proceedings. These procedures have been found to be constitutionally sufficient to challenge adverse determinations in connection with government entitlement programs. *See, e.g.*, *Banks v. HRA*, No. 11-CV-2380, 2013 WL 142374, at *3 (E.D.N.Y. Jan. 11, 2013); *Vapne v. Eggleston*, No. 04-CV-565 (NRB), 2004 WL 2754673, at *5 (S.D.N.Y. Dec. 1, 2004).

Here, Plaintiff alleges that she pursued a fair hearing with respect to the HRA's failure to act on her applications for benefits, that the ALJ directed HRA to continue to process her requests for benefits, but that HRA has not complied with the ALJ's directive. Under New York law, when an agency refuses to grant the relief ordered following a fair hearing, the appropriate remedy is for the injured party to seek relief in an Article 78 proceeding in the state courts. *See, e.g.*, *In re Shvartszayd v. Dowling*, 239 A.D.2d 104, 104-05 (1st Dep't 1997) (Article 78 proceeding holding State's failure to enforce City's compliance with State fair hearing decision was not "substantially justified"); *In re Parker v. Fahey*, 74 A.D.2d 669 (3d Dep't 1980) (denying County's motion to dismiss Article 78 petition, when it had failed to make payment when it had been ordered to do so at State fair hearing). Plaintiff has not alleged that she has pursued Article 78 relief in state court regarding HRA's alleged failure to comply with the outcome of the fair hearing process. The Court therefore dismisses Plaintiff's procedural due process claims, brought under Section 1983, arising from HRA's denial or failure to process Plaintiff's applications for public assistance benefits for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, the Court grants her leave to file an amended complaint alleging facts showing how an individual New York City official denied her procedural due process or provided her with inadequate process regarding the denial of benefits or the failure of HRA to timely process her applications.[5]

**D.      Class Action**

Plaintiff asks the Court to certify this case as a class action (ECF 1, at 38), and most of her allegations with respect to the City's processing of SNAP and cash assistance benefits appear to be asserted on behalf of the "thousands of New York City households" that rely on these benefits (*id.* at 16). To the extent that Plaintiff requests to proceed with this action as a class action, the Court must deny that request. The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself [or herself].'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (citation omitted). Because a nonlawyer cannot bring suit on behalf of others, a nonlawyer *pro se* plaintiff cannot act as a class representative and bring a class action. *Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) (summary order) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)); *Phillips v. Tobin*, 548 F.2d 408, 412-15 (2d Cir. 1976). Because Plaintiff does not allege that she is an attorney, the Court denies her request to proceed with this action as a class action.

---

[5] The Court notes that, despite Plaintiff's allegations that HRA has failed to process her applications as directed by the respective ALJs, she also appears to allege that HRA has processed her applications and has denied Plaintiff's requests for benefits because it determined that she was ineligible. If Plaintiff files an amended complaint, she should allege facts that clarify or explain this apparent discrepancy.

E.  **SNAP Processing Claims**

Plaintiff asserts claims that HRA is failing to timely process applications and recertifications for SNAP. The time limits for processing SNAP applications, contained in 7 U.S.C. § 2020(e), are privately enforceable through Section 1983. *See Briggs v. Bremby*, 792 F.3d 239, 245-46 (2d Cir. 2015). Plaintiff's allegations, however, suggest that she lacks standing to bring such claims.

Article III, Section 2, of the Constitution limits the jurisdiction of the federal courts "to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "Standing to sue or defend is an aspect of the case-or-controversy requirement." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). To demonstrate standing, a plaintiff must show that: (1) he has personally suffered some actual or threatened injury as a result of the defendant's alleged illegal conduct; (2) the injury is fairly traceable to the defendant's conduct; and (3) the injury is likely to be redressed by the requested relief. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The burden of establishing standing to sue rests with the party bringing the action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, "a generalized grievance, no matter how sincere, is insufficient to confer standing. A litigant raising only a generally available grievance . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks and citation omitted). "If [a] plaintiff[] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [her] claim." *Mahon*, 683 F.3d at 62 (internal quotation marks and citation omitted); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S.

694, 702 (1982) ("Subject-matter jurisdiction . . . is an Art. III as well as a statutory requirement . . . .").

Although Plaintiff asserts that numerous low-income families are impacted by HRA's alleged failure to meet processing deadlines for SNAP applications, nowhere in the complaint does Plaintiff allege specific facts showing that she herself applied for SNAP benefits, attempted to apply for SNAP benefits, or that any such application was not processed within the required timelines. Because Plaintiff does not allege that she personally suffered an actual or threatened injury with respect to her claims regarding the processing of SNAP applications and recertifications, she does not have standing to bring those claims. *Cf. Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 66 (D.D.C. 2018) (holding that plaintiff had standing to challenge SNAP processing timelines when she was not receiving benefits when more than 30 days had passed since submitting her application). The Court dismisses those claims for lack of standing, and, therefore, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Because Plaintiff appeared to believe she was filing the complaint as a class action, and therefore her personal allegations often appear overshadowed by generalized claims, and because much of the complaint is repetitive and confusing, the Court grants Plaintiff leave to amend her claims regarding SNAP in an amended complaint that alleges facts demonstrating that she has standing to bring such claims.

**F.      State Law Claims**

Plaintiff asserts various claims under state law, including claims for violating provisions of New York Social Services Law regarding processing of cash assistance applications, and claims for intentional and negligent infliction of emotional distress. A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law

13

claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### G. Plaintiff's Request to File Electronically

The Court grants Plaintiff's motion for permission to file documents electronically (ECF 13). The ECF Rules & Instructions are available online at https://nysd.uscourts.gov/rules/ecf-related-instructions.

After Plaintiff registers to file documents electronically, she no longer will receive service of documents by postal mail, whether or not she previously consented to accept electronic service. All documents filed by the court, or any other party, shall be served on Plaintiff by electronic notice to Plaintiff's designated email address. *See* Fed. R. Civ. P. 5(B)(2)(E).

Should Plaintiff have any questions regarding electronic filing, she may call the ECF Help Desk at (212) 805-0800.

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has

cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to cure the deficiencies identified above, the Court grants Plaintiff 30 days' leave to amend her complaint to detail her claims. Plaintiff's amended complaint should comply with the requirements of Rule 8 of the Federal Rules of Civil Procedures, which are described above, and should be limited to factual allegations regarding her own personal experiences. Plaintiff may not assert claims on behalf of others and extensive discussions of the statutory scheme and policy arguments are not required at this stage.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses Plaintiff's claims against HRA and DSS, and her procedural due process claims under Section 1983 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court dismisses Plaintiff's Section 1983 claims arising from the untimely processing of SNAP benefits for lack of standing, and, therefore, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

The Court grants Plaintiff 30 days' leave to replead her claims in an amended complaint that complies with the standards set forth above.

The Court grants Plaintiff's motion for permission to file documents electronically (ECF 13).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:  April 14, 2025
        New York, New York

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              Chief United States District Judge